UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KC **FILED**

SEP 2 6 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GERALDINE KING | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 4794 |
| | ) | |
| v. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| BURLINGTON NORTHERN and | ) | Magistrate Judge Mason |
| SANTA FE RAILWAY COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant Burlington Northern and Santa Fe Railway Company, n/k/a BNSF Railway

Company ("BNSF"), requests that this Court enter judgment pursuant to Fed. R. Civ. P. 56

dismissing the sole claim that Plaintiff raises against BNSF in this lawsuit. Plaintiff's claim for

malicious prosecution is barred as a matter of law under the doctrine of collateral estoppel as

established under Illinois common law. Plaintiff cannot establish essential elements of her claim

– that BNSF acted maliciously and lacked probable cause in commencing her prosecution –

because an arbitration panel convened pursuant to the Railway Labor Act ("RLA"), 45 U.S.C.

§ 153 Second, has issued a "final and binding" decision (45 U.S.C. § 153 First (m)) in which it

found that BNSF did not act arbitrarily or capriciously in terminating her employment and that

BNSF had presented a "convincing case" that Plaintiff had committed the theft of which she was

accused. These determinations by the independent arbitration panel are entitled to collateral

estoppel effect here and require the dismissal of Plaintiff's claims as a matter of law.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[1]

Plaintiff King alleges in her Complaint that BNSF wrongfully and maliciously initiated a criminal prosecution against her for an alleged theft of 10-ride passenger tickets from BNSF. 56.1 ¶ 1. In addition to initiating this prosecution, BNSF, in accordance with the procedures established in the collective bargaining agreement with Plaintiff's Union, the Transportation Communications Union ("TCU"), conducted two separate hearings on April 10, 2003, and May 2, 2003, to determine Plaintiff's role in the theft and whether disciplinary action was warranted. 56.1 ¶¶ 9, 10. At the hearings, BNSF presented testimonial and documentary evidence supporting its contention that Plaintiff had committed the theft of which she was accused. *Id.* Plaintiff and her union representative cross-examined witnesses and presented additional testimony. 56.1 ¶ 11. Following the hearings, Plaintiff submitted arguments, cited to the hearing testimony, and submitted additional exhibits supporting her contention that termination from BNSF was unjustified. 56.1 ¶ 15. BNSF, however, concluded that Plaintiff had committed theft, terminated her employment, and denied her appeals. 56.1 ¶¶ 7, 12, 14, 16, 18, 19. Plaintiff subsequently appealed BNSF's decision to arbitration before a System Board of Adjustment ("SBA") convened under Section 3 Second of the RLA, 45 U.S.C. § 153 Second. 56.1 ¶ 20. The SBA reviewed the entire record of the investigation, including the hearing transcripts, documentary evidence, and Plaintiff's arguments, and upheld Plaintiff's dismissal in its Award in Case No. 49. 56.1 ¶ 21, 23.

In upholding the dismissal, the SBA ruled as follows:

Given that the basic circumstances are the same in both cases and the
Organization has raised similar procedural arguments, the Board has taken both

---

[1] A complete statement of relevant uncontested facts is contained in Defendant's Local Rule 56.1 Statement of Uncontested Material Facts ("56.1 ¶ _"). Copies of cited exhibits and cases reported only in Westlaw are attached thereto.

> cases into account in deciding whether Claimant's dismissal, assessed in the two instances, was warranted.
>
> *     *     *     *     *
>
> Carrier appears to rest its decision on the fact that all of the [stolen] tickets were sold between 0500 and 0530 hours and that Claimant was the only ticket salesperson on duty between 5 and 5:30 AM.
>
> *     *     *     *     *
>
> While the Organization suggested that someone had slipped the tickets into Claimant's stack without her being aware of it, Carrier reasons that she would have been over in her cash drawer. She did not report any overage on the dates the stolen tickets were sold, however.
>
> *     *     *     *     *
>
> Carrier was still able to establish a convincing case that Claimant was the individual who sold and benefitted from the sale of the missing tickets. The circumstantial evidence is strong that she was the only person who could have done so. While a question about Claimant's role might have been raised when one missing ticket appeared, the presence of additional missing tickets all connected to Ms. King make for a compelling case.
>
> Claimant was granted all procedural rights due her by Agreement. The discipline assessed is neither arbitrary nor capricious. … Claim denied.

56.1 ¶ 23. In response to certain procedural objections raised by Plaintiff, the SBA issued a second ruling denying Plaintiff's objections and finding that "[t]he merits of these two cases were considered in Case No. 49 and it was determined that sufficient probative evidence was brought forth to support the conclusion that Claimant was at fault." 56.1 ¶ 25. All three members of the SBA, the Neutral Chairman, the Employee Member and the Carrier Member, signed both Award Nos. 49 and 50. 56.1 ¶ 27. Later, after Plaintiff's criminal theft prosecution was dismissed with leave to reinstate the charges, Plaintiff instituted this action, claiming that BNSF had prosecuted her maliciously. 56.1 ¶ 1, 29.

3

**ARGUMENT**

I.    **The SBA's Determination that BNSF Had Just Reason to Terminate Plaintiff's Employment Bars Plaintiff's Malicious Prosecution Claim under the Doctrine of Collateral Estoppel.**

In order to establish a claim for malicious prosecution under Illinois law, Plaintiff must

prove the following elements:

> (1) the commencement or continuance of a criminal or civil judicial proceeding by the defendant; (2) a termination of that proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding.

*Burghardt v. Remiyac*, 207 Ill. App. 3d 402, 404, 565 N.E.2d 1049, 1051 (2d Dist. 1991), citing

*Joiner v. Benton Cmty. Bank*, 82 Ill.2d 40, 45, 411 N.E.2d 229 (1980).

In the present case, because the SBA found that BNSF did not act arbitrarily and

capriciously in terminating Plaintiff's employment and that BNSF presented a "convincing case"

that Plaintiff had committed theft – findings that are entitled to collateral estoppel effect under

settled Illinois law – Plaintiff cannot establish two of the essential elements of her malicious

prosecution claim:  *i.e.*, the absence of probable cause and the presence of malice.

Under Illinois law,[2] the requirements for the application of collateral estoppel are:

---

[2] As the Court is well aware, under the familiar dictates of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "state law provides the rules of decision on all questions of substance" for a court sitting in diversity, as this Court sits in the instant case. *Wetherill v. University of Chicago*, 548 F. Supp. 66, 67-68 (N.D. Ill. 1982). Because the application of the doctrine of collateral estoppel is a matter of substantive law, the Court must apply Illinois law in determining the doctrine's applicability.  *E.g.*, *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977) ("In this diversity action, we must look to Illinois law to determine the collateral estoppel effect of Nathan's guilty plea."); *Sullivan v. Stefanik*, 605 F. Supp. 258, 259 (N.D. Ill. 1985) ("Since collateral estoppel is a matter of substantive law, we must follow the Illinois guidelines."); *Wetherill*, 548 F. Supp. at 68 n.5 ("For Erie purposes collateral estoppel questions are of course matters of substance.").  Accordingly, the Seventh Circuit's decision in *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507 (7th Cir. 1993), wherein the court refused to give issue preclusive effect to findings of a Public Law Board in a Federal Employers' Liability Act case, has no relevance here.

(1) the issue decided in the prior adjudication is identical to that presented in the instant suit; (2) the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; and (3) the prior suit resulted in a final judgment on the merits.

*Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 656 N.E.2d 134 (1st Dist. 1995), citing *In re Nau*, 153 Ill.2d 406, 424, 607 N.E.2d 134, 143 (1992). The requirements of collateral estoppel plainly have been met here.

### A.    The issue decided by the SBA is the same as that presented by Plaintiff's malicious prosecution claim.

The issue decided by the SBA – that BNSF had just cause to terminate Plaintiff's employment as the result of her theft – mirrors the issues that Plaintiff would need to demonstrate to establish a *prima facie* case of malicious prosecution:  *i.e.*, that BNSF lacked probable cause in initiating the theft prosecution against her and that BNSF knew that it lacked probable cause and thus acted maliciously in so doing.

In *Taylor*, for example, a case directly on point and determinative of the issue presented here, the Illinois Appellate Court affirmed summary judgment in favor of an employer who had been sued for malicious prosecution. *Taylor*, 275 Ill. App. 3d at 665, 656 N.E.2d at 142. As in the instant case, the employer in *Taylor* terminated the employment of two workers who had been accused of stealing company property. *Taylor*, 275 Ill. App. 3d at 657, 656 N.E.2d at 137. Through their union, the accused employees grieved their terminations and proceeded to arbitration. *Taylor*, 275 Ill. App. 3d at 658, 656 N.E.2d at 137-38. The arbitrators determined that clear and convincing evidence existed indicating that the terminated employees had sold stolen company property and that proper cause existed to support the employees' terminations. *Id.* The *Taylor* court then ruled that in light of the arbitrator's findings, the employees could not establish

5

that the defendant lacked probable cause as required to prove the employees' malicious prosecution claim. *Taylor*, 275 Ill. App. 3d at 662, 656 N.E.2d at 140.[3]

Similarly, in *Ivery v. United States*, 686 F.2d 410, 413 (6th Cir. 1982), the Sixth Circuit affirmed summary judgment in favor of the former employer, the U.S. Postal Service, after holding, under the principle of collateral estoppel, that an arbitrator's "just cause" determination prevented an employee, who had allegedly stolen money from the postal service, from asserting a malicious prosecution claim. Specifically, the Sixth Circuit found that, because the arbitrator had ruled that "just cause" existed to support the employee's termination, the employee could not establish the "lack of probable cause" element of his malicious prosecution claim. *Id.*

Here, BNSF is requesting that the Court give preclusive effect to the very same type of findings found to bar malicious prosecution claims in the *Taylor* and *Ivery* cases. The SBA determined that BNSF had just cause to terminate Plaintiff's employment after it found that

---

[3] The Appellate Court's *Taylor* decision is a controlling interpretation of Illinois common law that provides authoritative guidance for this Court in its consideration of BNSF's Motion for Summary Judgment.

> Federal Courts are bound to state court precedents in interpreting state law. *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 574 (7th Cir. 1993) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 6, 58 S. Ct. 817 (1938)). "In the absence of a decision by the highest state court, we should decide the matter in the way we divine that the highest state court would rule if the issue were squarely presented to it. Decisions of intermediate appellate courts generally control unless there are persuasive indications that the highest state court would decide the issue differently." *Id.* (citing *Hicks v. Feiock*, 485 U.S. 624, 630 n.3, 108 S. Ct. 1423, 1428 n.3 (1988)); *see also Todd v. Societe BIC, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) ….

*Ruca Hardware, Ltd. v. Chien*, No. 94 C 3635, 1995 WL 307172, at *7 n.11 (N.D. Ill. May 17, 1995). As the Seventh Circuit repeatedly has stated, the federal courts "shall follow" decisions of the Illinois Appellate Court "unless we have a 'compelling reason' to believe that they have stated the law incorrectly." *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004), quoting *AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). There are neither "compelling" nor "persuasive" reasons for concluding that the appellate court's interpretation of Illinois law is erroneous.

BNSF was "able to establish a convincing case that Claimant was the individual who sold and benefitted from the sale of the missing tickets." 56.1 ¶ 23. Because Plaintiff must demonstrate that BNSF lacked probable cause and acted maliciously in proceeding with the charges against her in order to prevail on her malicious prosecution claim, *Burghardt*, 207 Ill. App. 3d at 406, 565 N.E.2d at 1052, the SBA's finding precludes Plaintiff from establishing these essential elements of her cause of action.

      **B.     Plaintiff was the party in the prior proceeding.**

It cannot be disputed that the party against whom the estoppel is asserted here, Plaintiff, was a party, or in privity with a party (her Union), in the prior proceeding. Accordingly, the second requirement necessary for the application of collateral estoppel has been met.

      **C.     The SBA Awards were final judgments on the merits that are entitled to collateral estoppel effect.**

As evidenced in SBA Awards Nos. 49 and 50, the prior action resulted in a final judgment on the merits. That BNSF seeks to use a final judgment from an arbitration, rather than from a prior court proceeding, poses no impediment to the application of collateral estoppel here. Findings by arbitrators repeatedly have been given issue-preclusive effect to prevent subsequent actions by employees who were unsuccessful in the underlying arbitration. *E.g.*, *Taylor*, 275 Ill. App. 3d at 662, 656 N.E.2d at 140; *Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855, 858 (8th Cir. 2000) (giving preclusive effect, in the RLA context, to an arbitration award by the SBA); *Benjamin v. Traffic Executive Ass'n Eastern R.R.*, 869 F.2d 107, 110-14 (2d Cir. 1989) (affirming summary judgment for railroad after determining that findings made in underlying arbitration were entitled to collateral estoppel effect); *Ivery*, 686 F.2d at 413-14; *BEM I, LLC v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *11-12 (N.D. Ill. Dec. 15, 2000)

7

(Pallmeyer, J.) (citing *Taylor* and granting motion to dismiss after applying collateral estoppel to findings of an arbitration award), *aff'd*, 301 F.3d 548 (7th Cir. 2002).

In *Taylor*, the Illinois Appellate Court affirmed summary judgment for the employer after applying collateral estoppel to an arbitration decision. In affirming summary judgment, the court noted that, "[a]s a general rule, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments..." *Taylor*, 275 Ill. App. 3d at 661, 656 N.E.2d at 139. An exception to this rule exists only where the underlying arbitration was "unfair or the result unreliable, or where giving the award preclusive effect would be incompatible with other legal or contractual policies." *Id.* The court found that the exception did not apply because, among other reasons, the tort of malicious prosecution did "not involve an analysis of firmly rooted Illinois public policy or statutes." *Id.*, 275 Ill. App. 3d at 661, 656 N.E.2d at 140. The *Taylor* court's observation that a malicious prosecution claim does not implicate Illinois public policy or statutes also would apply to the instant case where Plaintiff's sole claim is one of malicious prosecution under Illinois common law.

Moreover, the RLA's statutory language and Supreme Court precedent support giving the SBA's findings the collateral estoppel effect that BNSF seeks. Under the RLA, the SBA is charged with deciding labor disputes by issuing awards that "shall be final and binding upon both parties to the dispute ...." 45 U.S.C. § 153 First (m). The United States Supreme Court repeatedly has held that the determinations of arbitration boards under Section 3 of the RLA are not subject to relitigation in the courts. For example, in *Union Pacific R.R. Co. v. Price*, 360 U.S. 601, 617 (1959), the Court rejected the argument that claims presented to a board convened under the RLA could be relitigated in a subsequent court action.

> To say that the discharged employee may litigate the validity of his discharge in a common-law action for damages after failing to sustain his grievance before the

8

Board is to say that Congress planned that the Board should function only to render advisory opinions, and intended the Act's entire scheme for the settlement of grievances to be regarded "as wholly conciliatory in character, involving no element of legal effectiveness, with the consequence that the parties are entirely free to accept or ignore the Board's decision ... (a contention) inconsistent with the Act's terms, purposes and legislative history."

*Price*, 360 U.S. at 617, quoting *Elgin J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 720-21 (1945); *see also Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) ("Section 153 First (q) unequivocally states that the 'findings and order of the [Adjustment Board] shall be conclusive on the parties' and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says."); *Gunther v. San Diego & Arizona Eastern Ry. Co.*, 382 U.S. 257, 263 (1965) ("This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board."); *id.* at 264 ("The merits of the wrongful removal issue as decided by the Adjustment Board must be accepted by the District Court."); *Brotherhood of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 38 (1963) ("The several decisions of this Court interpreting [§] 3 First have made it clear that this statutory grievance procedure is a mandatory, exclusive, and comprehensive system for resolving grievance disputes. ...[T]he process of decision through the Adjustment Board cannot be challenged collaterally by methods of review not provided in the statute."). In light of the language and policies of the RLA and the consistent Supreme Court holdings, Plaintiff may not collaterally attack the findings of the SBA by repackaging issues definitely resolved against her as part of a malicious prosecution claim.

Numerous decisions from throughout the country have given collateral estoppel effect to findings of arbitration boards convened under the RLA in a variety of contexts. *E.g.*, *Summerville*, 219 F.3d at 858 (giving preclusive effect to SBA award and noting that "[w]e defer

to the System Board's fact-finding because the System Board has exclusive statutory authority to decide disputes, such as Summerville's, regarding the interpretation and application of the collective bargaining agreement."); *Benjamin*, 869 F.2d at 110-11 (applying issue preclusion to arbitration board's finding that plaintiffs were "rate bureau employees"); *Metro-North Commuter R.R. Co. v. New York State Executive Dep't Div. of Human Rights*, 707 N.Y.S.2d 50, 51-52 (N.Y. App. Div. Apr. 11, 2000) (holding that an SBA's determination that an employee assaulted a co-worker was entitled to collateral estoppel effect in subsequent proceedings); *Oden v. Norfolk Southern Ry. Co.*, No. 96-P-111-S, 1997 WL 842407, at *4 (N.D. Ala. Nov. 25, 1997) (granting summary judgment in favor of defendant after finding that the plaintiff could not prove pretext in light of Public Law Board's determination that the plaintiff properly was terminated for making false accusations against a co-worker); *cf. Miller v. Norfolk & Western Ry. Co.*, 834 F.2d 556, 563 (6th Cir. 1987) ("If the section 11347 claim is nothing more than a claim that the plaintiff was discharged in violation of his rights under that section, which it apparently must be, then contrary to what the plaintiff says, the district court would have had to have given collateral estoppel effect to the determination of the public law board that the plaintiff was discharged because he had participated in the scam."); *Essary v. Chicago & North Western Transp. Co.*, 618 F.2d 13, 17 (7th Cir. 1980) (holding that National Railroad Adjustment Board's decision was "on the merits" and precluded a subsequent common-law action on the same claim).

In short, the SBA's Awards in the underlying dispute between Plaintiff and BNSF are final judgments, and the findings contained therein should be given issue preclusive effect here.

**II.      Plaintiff Had a Full and Fair Opportunity to Litigate Before the SBA.**

In addition to the three requirements for the application of collateral estoppel, which plainly are satisfied here, courts also examine whether the party against whom the estoppel is

applied had a "full and fair opportunity to contest the issue." *Taylor*, 275 Ill. App. 3d at 660, 656

N.E.2d at 139. While Plaintiff may argue that the proceedings before the SBA should not be

entitled to issue preclusive effect because those proceedings differed in some respects from

judicial proceedings, such an argument should be rejected for several reasons.

First, the requirement that Plaintiff be afforded a "full and fair opportunity" to litigate is

met easily under governing Illinois law. As explained by the *Taylor* court:

> The "full and fair opportunity" requirement is satisfied even if only a slight
> amount of evidence was presented on the disputed matter decided in the first suit.
> Further, "actually litigated" does not mean thoroughly litigated, but only that the
> parties disputed the issue and the trier of fact resolved it. Collateral estoppel
> generally will apply as long as the party had a procedural, substantive, and
> evidentiary opportunity to be heard on the issue.

275 Ill. App. 3d at 663, 656 N.E.2d at 141 (citations omitted).

In the present case, Plaintiff had a procedural, substantive, and evidentiary opportunity to

be heard. She and her union representative cross-examined each railroad witness, presented

testimony, and submitted written arguments that highlighted portions of the hearing transcript

and included over 40 exhibits. 56.1 ¶¶ 11, 15, 21.

Furthermore, the numerous decisions applying issue preclusion to findings of RLA

arbitration boards demonstrate that arbitration procedures under the RLA afford a full and fair

opportunity to litigate for collateral estoppel purposes. *E.g., Benjamin*, 869 F.2d at 110 (applying

issue preclusion after ruling that the plaintiffs had a full and fair opportunity to litigate in the

underlying arbitration even though the Federal Rules of Evidence did not apply to the

arbitration); *see also* pp. 9-10 *supra*.

Finally, Plaintiff raised several procedural objections that were considered and ruled upon

by the independent SBA. For example, the SBA determined that the three-day delay in

conducting the hearing (due to inclement weather and witness unavailability) "in no way harmed

Claimant." 56.1 ¶¶ 24, 26. Additionally, the SBA found BNSF's failure to produce certain customer witnesses "understandable" in light of the railroad's lack of subpoena power. *Id*. Other witnesses that Plaintiff sought to question "would have added nothing to the proceedings" in the eyes of the SBA. *Id*. Moreover, the SBA found that a complete transcript was provided to Plaintiff. *Id*. All of these procedural rulings were affirmed in a subsequent award by the SBA.[4] 56.1 ¶ 26.

Plaintiff likely will object to the application of collateral estoppel because of two procedural elements of the underlying arbitration: (i) that Plaintiff was represented by a union official, rather than an attorney, in a hearing overseen by a railroad officer and conducted on the railroad's property, and (ii) that the railroad did not present certain passenger witnesses who spoke with a railroad investigator and identified Plaintiff as the employee who sold them the stolen tickets. These objections do not preclude the application of collateral estoppel for two reasons.

First, Congress established the arbitration provisions under the RLA "for effective and final decision of grievances which arise daily, principally as matters of the administration and application of the provisions of collective bargaining agreements." *Price*, 360 U.S. at 616. Notwithstanding the less formal procedures of RLA-established arbitrations when compared with court actions, as demonstrated above, Congress intended the findings of boards established under the RLA to be final and binding, and courts repeatedly have given collateral estoppel effect to determinations made by such boards.

---

[4] In Award No. 50, the SBA upheld one of Plaintiff's procedural objections regarding BNSF's nine-day delay in issuing its decision to terminate her employment. In accordance with the Award, BNSF paid Plaintiff for this nine-day period. This procedural objection has no bearing on the instant motion for summary judgment. 56.1 ¶ 26.

Second, any complaint by Plaintiff relating to BNSF's lack of subpoena power in the underlying arbitration and the resulting unavailability of certain customer witnesses is immaterial to the instant motion. The critical question presented by Plaintiff's malicious prosecution claim is whether BNSF acted with malice and lacked probable cause in initiating the theft prosecution against Plaintiff. Any objection by Plaintiff that certain customer witnesses were not present, however, would only attack the validity of the finding that Plaintiff actually committed the theft. To establish her malicious prosecution claim, Plaintiff must show not only that BNSF lacked probable cause, but also that BNSF *knew* that it lacked probable cause and thereby acted maliciously in initiating the prosecution. Thus, the fact that certain customer witnesses were not present at the hearing would not change the conclusion, as determined by the SBA, that BNSF did not act arbitrarily and capriciously in terminating Plaintiff's employment because BNSF *genuinely believed* that Plaintiff committed the theft when it terminated her employment. The testimony by the BNSF investigator of his interviews with the customer witnesses established the railroad's *mens rea* in initiating Plaintiff's prosecution. Accordingly, the railroad officer's testimony was sufficient to establish that BNSF believed that Plaintiff committed the theft, as the SBA expressly found, and the absence of subpoena power in the underlying arbitration should not preclude an application of the doctrine of collateral estoppel here.

## CONCLUSION

For the foregoing reasons, Defendant Burlington Northern and Santa Fe Railway Company, n/k/a BNSF Railway Company, respectfully requests that the Court enter judgment dismissing the claims of Plaintiff Geraldine King with prejudice.

Respectfully submitted,

**BNSF RAILWAY COMPANY**

By: _____
        One of Its Attorneys

James S. Whitehead
Michael B. Segall
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7703

## CERTIFICATE OF SERVICE

Michael B. Segall, one of the attorneys for Defendant BNSF Railway Company, certifies that he caused a copy of the attached to be mailed, first-class postage prepaid, on September 26, 2005, to:

John S. Bishof
Law Office of John Bishof, P.C.
77 West Washington St.
Suite 1910
Chicago, IL 60602

15