# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALDINE KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 4794 |
| ) | |
| BURLINGTON NORTHERN and ) | Judge Rebecca R. Pallmeyer |
| SANTA FE RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") employed Plaintiff Geraldine King until an investigation of the loss of a number of passenger tickets resulted in her discharge in 2004. BNSF filed criminal charges against Plaintiff, resulting in this lawsuit for malicious prosecution. While the criminal charges were pending, Defendant conducted two investigative hearings regarding the theft of these tickets and subsequently terminated Plaintiff's employment based upon the evidence presented at the hearings through her union. Plaintiff appealed her termination to a System Board of Adjustment ("SBA"), but the SBA concluded that BNSF had made a "convincing case" of Plaintiff's involvement in the theft and affirmed her discharge. Defendant now moves for summary judgment, arguing that the SBA's decision bars Plaintiff's malicious prosecution claim under the doctrine of collateral estoppel. For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

The facts relevant to this motion are largely undisputed. Defendant BNSF hired Plaintiff Geraldine King, an African-American female, as a clerk on May 16, 1977.[1] (Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(b)(3)(B) (hereinafter, "Pl. 56.1 Stmt.") ¶¶ 2-3.) Plaintiff worked as a ticket agent at the Aurora BNSF station from June 2002 until April 2003, when

---

[1] BNSF is incorporated in Delaware and has its principal place of business in Texas. King is an Illinois citizen.

she was suspended pending investigation of her involvement with the loss of 100 "10-ride" passenger tickets. (Transcript of investigation held on April 10, 2003 (hereinafter "April 10 Transcript"), Ex. 1 to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (hereinafter, "Def. 56.1 Stmt."), at 62; Pl. 56.1 Stmt. ¶ 5.) During the relevant time, Plaintiff worked the third shift, 10:30 P.M. until 6:30 A.M., and she was the only ticket seller on duty from the time she opened the ticket office at 4:15 A.M. until approximately 6:00 A.M. (*Id.*)

In early March 2003, Sue Walker, Chief Clerk for BNSF, noticed a discrepancy in ticket inventory reported from Aurora Station. (*Id.* at 7-8, 14.) Specifically, 100 "10-ride" tickets were absent from the inventory, and after an unsuccessful search of the station on March 13, 2003, the tickets were deemed stolen. (*Id.* at 8.) On March 17, BNSF Special Agent G.D. Lange began an investigation into the missing tickets and on March 26, located a passenger with a ticket numbered within the missing series of tickets and date-stamped March 24, 2003. (*Id.* at 8, 17.) The first punch on the recovered ticket was identified as unique to a 5:25 A.M. train out of Aurora on March 24. (*Id.* at 8, 18) According to Lange, the passenger identified Plaintiff in a photo line-up as the person who sold him that ticket. (*Id.* at 8, 51-52.)

BNSF Special Agent Lange subsequently filed a criminal complaint in Kane County against Plaintiff for the theft of the missing tickets.[2] (Pl. 56.1 Stmt. ¶ 21; Def. Response to Pl. 56.1 Stmt. ¶ 21.) Plaintiff asserts, without citing any supporting evidence, that she alone was the focus of Defendant's investigation into the missing tickets, despite being one of ten to twelve employees who worked at the Aurora Transportation Center ticket office and had access to the missing tickets. (*Id.* at ¶¶ 29-30.) Citing testimony from the investigatory hearings, Defendant contends that Special Agent Lange interviewed numerous BNSF employees regarding the ticket theft and focused his

---

[2] The date of filing is disputed. Plaintiff asserts that Lange initiated the criminal complaint on March 24, 2003, but she cites no evidence that establishes that date, (Pl. 56.1 Stmt. ¶ 21), and Defendant has no knowledge of the date the criminal complaint was initiated. (Def. Response to Pl. 56.1 Stmt. ¶ 21.) Neither side has submitted a date-stamped copy of the criminal complaint as an exhibit.

investigation on Plaintiff only after evidence came to light, including the statements of BNSF passengers regarding the time and location of their purchase of the missing tickets, that Plaintiff alone could have sold them. (Def. Response to Pl. 56.1 Stmt. ¶ 30 (citing Apr. 10 Transcript, Ex. 1 to Def. 56.1 Stmt., at 52-56; Transcript of investigation held on May 2, 2003 (hereinafter "May 2 Transcript"), Ex. 2 to Def. 56.1 Stmt., at 25-26, 30).)

Pursuant to provisions of the collective bargaining agreement between Defendant and Plaintiff's union, the Transportation Communications Union ("TCU") No. 781, Defendant held an initial hearing on April 10, 2003 to determine Plaintiff's role in the alleged theft of the ticket recovered on March 26. (Def. 56.1 Stmt. at ¶¶ 8-9 (citing April 10 Transcript, Ex. 1 to Def. 56.1 Stmt., at 8-9).) This hearing was originally scheduled for April 7, 2003, but was postponed for three days due to weather conditions and prior commitments of the hearing officer. (April 10 Transcript, Ex. 1 to Def. 56.1 Stmt., at 3.) Plaintiff attended the hearing and was represented by Marvie Parker, District Chairman of TCU No. 781. (Pl. 56.1 Stmt. ¶ 9.) Ms. Parker objected to the delay in proceedings as contrary to the working agreement between BNSF and TCU, which provides that an investigation must be held within seven calendar days of the date when the employee is charged with the offense or held out of service unless delay is necessary to secure presence of witnesses or representatives. (April 10 Transcript, Ex. 1 to Def. 56.1 Stmt., at 4.) Hearing Officer A.J. Schuurman noted Ms. Parker's objection but continued with the hearing. (*Id.*)

Defendant convened a second hearing on May 2, 2003, when two additional tickets in the missing series were recovered and linked to Plaintiff. (Def. 56.1 Stmt. ¶ 10 (citing May 2 Transcript, Ex. 2 to Def. 56.1 Stmt., at 3).) One of these two additional recovered tickets was stamped as sold on January 29, 2003, and the deposit slip for the check payment for the ticket was written in Plaintiff's handwriting. (May 2 Transcript, Ex. 2 to Def. 56.1 Stmt., at 18-19.) The other recovered ticket was stamped as sold March 7, 2003, and the first punch on the ticket was for a train departing at 4:47 A.M. (*Id.* at 20-21.) Plaintiff worked on the mornings of January 29 and March 7 but

3

reported no overage in her cash drawer that would have compensated for the sale of the missing, out-of-series tickets. (*Id.* at 22.)

Plaintiff and her union representative had the opportunity to cross-examine witnesses and present testimony at both hearings. (*Id.* at ¶ 11 (citing April 10 Transcript, Ex. 1 to Def. 56.1 Stmt., and May 2 Transcript, Ex. 2 to Def. 56.1 Stmt.).) Although neither she nor her union had the authority to compel the presence of any non-employee witness, (Pl. 56.1 Stmt. ¶ 17.), Plaintiff was free to request the presence of witnesses at the hearings. (Def. Response to Pl. 56.1 Stmt. ¶ 17.) Plaintiff did not in fact request the appearance of witnesses other than those already present at the hearings. (May 2 Transcript, Ex. 2 to Def. 56.1 Stmt., at 48.) At both hearings, Plaintiff objected to the lack of procedural safeguards she had been provided, including her inability to cross-examine the BNSF passengers who possessed the missing tickets. (Apr. 10 Transcript, Ex. 1 to Def. 56.1 Stmt., at 79; May 2 Transcript, Ex. 2 to Def. 56.1 Stmt., at 47.) Instead of presenting these customers as witnesses, BNSF Special Agent Lange testified to the statements they provided regarding how the tickets came into their possession. (Pl. 56.1 Stmt. ¶ 47.) As a result of the evidence presented at both investigative hearings, Defendant terminated Plaintiff's employment. (Def. 56.1 Stmt. ¶ 12 (citing letter from Schuurman to King of 4/28/2003, Ex. 3 to Def. 56.1 Stmt.; letter from Schuurman to King of 5/29/03, Ex. 4 to Def. 56.1 Stmt.).)

Through her Union representative Marvie Parker, Plaintiff sent two appeals of her termination, one for each hearing, to Michelle McBride, Defendant's Senior Analyst/Manpower Planning. (*Id.* at ¶ 13 (citing letter from Parker to McBride of 6/24/03, Ex. 5 to Def. 56.1 Stmt. and letter from Parker to McBride of 7/27/03, Ex. 6 to Def. 56.1 Stmt.).)[3] Ms. McBride denied Plaintiff's initial appeals. (*Id.* at ¶ 14 (citing letter from McBride to Parker of 8/19/03, Ex. 7 to Def. 56.1 Stmt., and letter from McBride to Parker of 9/22/03, Ex. 8 to Def. 56.1 Stmt.).) Through R.A. Arndt,

---

[3] Although the parties have not specifically addressed the matter, the court presumes these appeals were taken pursuant to provisions of the collective bargaining agreement.

General Chairman of TCU, Plaintiff made two further appeals of her termination to Defendant's General Director/Labor Relations, documenting her claim with exhibits including the full hearing transcripts, Plaintiff's previous appeals and Defendant's responses, and Railroad Adjustment Board awards from prior cases finding in favor of claimants on procedural grounds (e.g., a hearing held more than ten days after charging claimant with an offense or holding claimant out of service). (*Id.* at ¶ 15 (citing letter from Arndt to Broxterman of 10/17/03, Ex. 9 to Def. 56.1 Stmt., and letter from Arndt to Broxterman of 11/18/03, Ex. 10 to Def. 56.1 Stmt.).) Defendant denied both of these appeals, as well, noting specifically that Plaintiff's procedural objections were without merit. (*Id.* at ¶ 16 (citing letter from Broxterman to Arndt of 2/24/04, Ex. 11 to Def. 56.1 Stmt., and letter from Broxterman to Arndt of 2/25/04, Ex. 12 to Def. 56.1 Stmt.).) Two more appeals were similarly unsuccessful. (*Id.* at ¶¶ 17-19 (citing letter from Arndt to Broxterman of 3/15/04, Ex. 13 to Def. 56.1 Stmt., letter from Arndt to Broxterman of 3/15/04, Ex. 14 to Def. 56.1 Stmt., letter from Broxterman to Arndt of 3/29/04, Ex. 15 to Def. 56.1 Stmt., letter from Broxterman to Arndt of 3/29/04, Ex. 16 to Def. 56.1 Stmt., letter from Swanson to Broxterman of 4/2/04, Ex. 17 to Def. 56.1 Stmt., letter from Swanson to Broxterman of 4/2/04, Ex. 18 to Def. 56.1 Stmt., letter from Broxterman to Arndt of 4/7/04, Ex. 19 to Def. 56.1 Stmt., and letter from Broxterman to Arndt of 4/7/04, Ex. 20 to Def. 56.1 Stmt.).)

During the pendency of these appeals, Special Agent Lange recovered a fourth missing ticket that was also linked to Plaintiff. (Defendant's Response to Plaintiff's Additional Statement of Uncontested Facts (hereinafter "Def. Response") to Pl. 56.1 Stmt. ¶ 33 (citing letter from Broxterman to Arndt of 3/29/04, Ex. 15 to Def. 56.1 Stmt., at 4 attachment 3; and letter from Broxterman to Arndt of 3/29/04, Ex. 16 to Def. 56.1 Stmt., at 5 attachment 4).) This ticket was stamped as sold on February 12, 2003, for use on the 5:47 A.M. train. (*Id.*) The receipt for check payment had been filled out in Plaintiff's handwriting. (*Id.*)

TCU, representing Plaintiff, continued to appeal the results of both hearings through the

highest level of recourse: a System Board of Adjustment ("SBA") arbitration panel convened pursuant to the Railway Labor Act. (*Id.* at ¶ 20 (citing SBA No. 1128, Award in Case Nos. 49 and 50 (hereinafter "SBA Award 49" and "SBA Award 50"), Ex. 21-22 to Def. 56.1 Stmt.).) The SBA was comprised of Carrier Member O.D. Wick, an officer of BNSF; R.A. Arndt, the general chairman of TCU; and C.H. Gold, the neutral SBA chairman. (*Id.* at ¶ 27 (citing SBA Award 49 and SBA Award 50, Ex. 21-22 to Def. 56.1 Stmt.).)[4] Defendant and TCU submitted all testimony and arguments from the prior investigation and hearings to the SBA. (Def. 56.1 Stmt. ¶ 21.) Plaintiff observes that the SBA was not allowed to hear additional testimony or view supplemental exhibits, nor was it allowed to review Defendant's investigatory proceedings *de novo*. (Pl. 56.1 Stmt. ¶¶ 62-63.) She has not, however, identified any testimony or exhibits she would have offered had she the opportunity to do so. (*Id.*) Defendant counters that Plaintiff did not support these claims with evidence as required by Fed. R. Civ. P. 56(e), but concedes that in accordance with railroad and union guidelines, the record from Plaintiff's hearings was closed on a specified date and the SBA was not allowed to entertain additional testimony or exhibits past that date. (Def. Response to Pl. 56.1 Stmt. ¶ 62.) Defendant notes, however, that the SBA was permitted to review any and all investigation records, including transcripts from both investigations and all correspondence between BNSF and TCU. (*Id.* at ¶ 63.)

In Award 49, regarding the April 10 hearing, the SBA ruled that Defendant was "able to establish a convincing case that [Plaintiff] was the individual who sold and benefited from the sale of the missing tickets." (Def. 56.1 Stmt. ¶ 23 (quoting SBA Award 49, Ex. 21 to Def. 56.1 Stmt.).) The SBA acknowledged that Defendant's case relied heavily on "the fact that all of the [stolen] tickets were sold between 0500 and 0530 hours and that [Plaintiff] was the only ticket salesperson on duty between 5 and 5:30 A.M." (*Id.*) The SBA rejected TCU's defense that someone had slipped the missing tickets into Plaintiff's stack without her knowledge. (*Id.*) Had such an event

---

[4] The parties did not disclose the method that the collective bargaining agreement establishes to choose the SBA chairman/neutral party.

occurred, the SBA reasoned, Plaintiff would have had extra funds in her cash drawer at the end of her shift, but she did not report any overage on the dates when the tickets were sold. (*Id.*) The SBA also determined that objections Plaintiff had raised during the hearings were insufficient. (*Id.* at ¶ 24 (quoting SBA Award 49, Ex. 28 to Def. 56.1 Stmt.).) Specifically, the SBA ruled that a three-day delay (from April 7 to April 10) in conducting the initial hearing was "reasonable," that Defendant's failure to provide first-hand testimony of ticket purchasers was "understandable, given Carrier's lack of subpoena power," that testimony from additional witnesses, such as ticket collectors, "would have added nothing to the proceedings," and that TCU had been provided a complete transcript of the hearings. (*Id.*) In Award 50, regarding the May 2 hearing, the SBA reiterated that the merits of Plaintiff's case had been previously considered in SBA Award 49 and stood by its finding that the evidence presented was sufficient to establish the conclusion that Plaintiff was guilty of the ticket theft. (*Id.* at ¶ 25 (quoting SBA Award 50, Ex. 22 to Def. 56.1 Stmt).)

On November 16, 2004, the criminal complaint against plaintiff was dismissed because no complaining witness appeared for trial. (Pl. 56.1 Stmt. ¶¶ 22-23.) It is undisputed that complaining witness BNSF Special Agent Lange was present in court that day and that he spoke with the Kane County Assistant State's Attorney prior to Plaintiff's criminal case being called. (*Id.* at ¶ 23.)[5] The criminal complaint could not be reinstated because more than a year had passed since it had been filed. (*Id.* at ¶ 24.)

## DISCUSSION

To establish her claim of malicious prosecution under Illinois law, Plaintiff must prove the following elements:

> (1) the commencement or continuance of a criminal or civil judicial proceeding by the defendant; (2) a termination of that proceeding in favor of the defendant; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) damages to the plaintiff resulting from the commencement or continuance of that

---

[5] Neither party has documented the substance of the conversation between Lange and the Assistant State's Attorney.

proceeding.

*Burghardt v. Remiyac*, 207 Ill. App. 3d 402, 404, 565 N.E.2d 1049, 1051 (2d Dist. 1991) (citing *Joiner v. Benton Cmty. Bank*, 82 Ill.2d 40, 45, 411 N.E.2d 229, 232 (1980)). Defendant does not contest elements (1), (2), or (5) of Plaintiff's malicious prosecution claim. Defendant contends, however, that because the SBA found that BNSF acted neither arbitrarily nor capriciously in firing Plaintiff and that BNSF had presented a "convincing case" in support of its allegations of Plaintiff's theft, Plaintiff is collaterally estopped from establishing two of the essential elements of case: the absence of probable cause and the presence of malice. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment (hereinafter "Def. Memo"), at 4.) Plaintiff argues that there are disputes of material fact that preclude entry of summary judgment on the collateral estoppel defense.

**Choice of Law**

Before addressing the requirement for collateral estoppel, the court addresses a preliminary matter: what law applies. The parties agree that under the *Erie* doctrine, state law controls substantive decisions in this diversity case, *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002), but they disagree on whether the application of the doctrine of collateral estoppel is a substantive or procedural matter. Plaintiff contends that the rules governing Illinois choice of law mandate the use of the law of the jurisdiction where the judgment was rendered. *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977). The SBA award arises out of the RLA and is governed by federal law, *Intl. Ass'n of Machinists v. Central Airlines*, 372 U.S. 682, 684-86 (1963), and therefore, argues Plaintiff, federal law is the appropriate jurisdictional law to use to determine the collateral estoppel effect of the SBA award. She cites *Instituto Nacional de Comercializacion Agricola v. Continental Illinois National Bank and Trust Co.*, 858 F.2d 1264 (7th Cir. 1988), where the Seventh Circuit held that Illinois choice of law rules required application of federal rather than state law in determining the collateral estoppel effect of a criminal conviction for fraud on a civil

8

fraud action. *Id.* at 1271.

Defendant urges that Illinois collateral estoppel law should apply because the application of that doctrine is itself a matter of substantive law. *Nathan*, 560 F.2d at 763 (applying Illinois choice of law rules in a diversity action to determine that plaintiff's prior guilty plea to mail fraud in federal district court mandated application of federal collateral estoppel law to bar plaintiff from recovering commissions purportedly due to him under terms of a contract). Defendant cites *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 656 N.E.2d 134 (1st Dist. 1995), where the court gave collateral estoppel effect to the results of an arbitration award to bar a malicious prosecution claim, despite the fact that Section 301 of the federal Labor Management Relations Act, 29 U.S.C. § 185, governed the arbitration. *Id.* at 662, 656 N.E.2d at 140. *Taylor* made no mention of any choice of law issues, however, nor is there any indication such issues were raised by the parties in *Taylor*.

To the extent that arbitration under the RLA is understood as a creature of federal law, Plaintiff may well have the better of this issue, but the court concludes that it makes no substantive difference in the outcome of this case. As this court has observed in another context, federal and state collateral estoppel rules are virtually identical. *See BEM I, LLC v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *11 (N.D. Ill. Dec. 15, 2000) (giving collateral estoppel effect to an arbitrator's findings in a fraud claim). The federal requirements for collateral estoppel are as follows:

> (1) The party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.

*Appley v. West*, 832 F.2d 1021, 1025 (7th Cir. 1987) (quoting *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986)).

Under Illinois law, the requirements for collateral estoppel are as follows:

(1) The issue decided in the prior adjudication is identical to that presented in the

9

> instant suit; (2) the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; and (3) the prior suit resulted in a final judgment on the merits.

*Taylor,* 275 Ill. App. 3d at 660, 656 N.E.2d at 139 (citing *In re Nau*, 153 Ill. 2d 406, 424, 607 N.E.2d 134, 143 (1992)).

In sum, both federal and state law require that the issue in the case at bar be identical to the previously adjudicated issue, that the party against whom estoppel is asserted have been a party in the prior suit, and that the prior suit be one that was litigated and decided on the merits. Federal estoppel law also includes the separate requirement that "the resolution of the particular issue was necessary to the result," but this requirement is satisfied by the facts here: the key issue in the SBA award was its finding that Defendant had just cause to terminate Plaintiff's employment as the result of the evidence indicating her involvement in the theft. (Def. 56.1 Stmt. ¶¶ 23-26 (quoting SBA Award 49, Ex. 21 to Def. 56.1 Stmt., and SBA Award 50, Ex. 22 to Def. 56.1 Stmt.).) Having found that the fourth federal requirement has been met, the court will address the remaining three elements of collateral estoppel that apply under both state and federal law. *Appley*, 832 F.2d at 1025; *Taylor*, 275 Ill. App. 3d at 660, 656 N.E.2d at 139. If those elements are present, the court considers, further, the question whether Plaintiff had a full and fair opportunity to be heard in the earlier proceedings.

**Identical Issue**

To establish her claim of malicious prosecution, Plaintiff must show that BNSF lacked probable cause in initiating its prosecution against her and that BNSF knew that it lacked probable cause, thereby establishing malice on the part of BNSF. Defendant argues that the SBA decided this precise issue when it determined that BNSF had just cause to terminate Plaintiff's employment. (Def. Memo, at 5.) In *Taylor*, a case nearly identical to this one, the Illinois Appellate Court affirmed summary judgment in favor of the defendant employer who was being sued for malicious prosecution by two workers accused of stealing company property. *Taylor*, 275 Ill. App. 3d at 665,

656 N.E.2d at 142. As here, accused workers had appealed their termination through arbitration and also filed a malicious prosecution suit against their employer. *Id.* at 657-58, 656 N.E.2d at 137. While the malicious prosecution suit was pending, the arbitrators ruled against the workers, noting that "clear and convincing" evidence existed to prove their guilt of theft. *Id.* at 658, 656 N.E.2d at 137. Because the arbitrators found clear and convincing evidence of the plaintiffs' crimes, the *Taylor* court concluded, plaintiffs could not establish that the defendants lacked probable cause to proceed with the charges against them, an essential element in their malicious prosecution claim. *Id.* at 662, 656 N.E.2d at 140.

In this case, similarly, the SBA determined that Defendant was able to establish a convincing case that Plaintiff sold the missing tickets and profited from their sale. (Def. 56.1 Stmt. ¶ 23.) A successful malicious prosecution claim by Plaintiff must establish that Defendant acted maliciously and without probable cause in proceeding with her criminal charges. *Burghardt*, 207 Ill. App. 3d at 406, 565 N.E.2d at 1052. As Defendant asserts, the SBA's determination of Plaintiff's guilt based upon the evidence presented by BNSF at her hearings prevents Plaintiff from establishing the absence of probable cause.

Plaintiff argues that the SBA was charged with deciding issues pursuant to the railroad collective bargaining agreement, not state law, and that therefore the SBA did not decide the elements required for malicious prosecution. (Pl. Memo, at 14.) Though Plaintiff is correct in noting that the SBA was not charged with determining whether Defendant acted maliciously, the SBA did establish that Defendant acted with probable cause in terminating Plaintiff's employment. (Def. 56.1 Stmt. ¶ 23.) Thus, the required probable cause element of Plaintiff's malicious prosecution claim is the same issue as was decided by the SBA at her prior arbitration, regardless of whether or not the SBA specifically addressed the issue of malice.

**Party in Prior Litigation**

A second requirement for application of collateral estoppel is a showing that Plaintiff was a party, or in privity with a party (her Union), in the prior litigation. (Def. Memo, at 7.) Defendant urges that this requirement is satisfied here, but Plaintiff disagrees, arguing first that the SBA arbitration was not "prior litigation." (Pl. Memo, at 14-15.) Plaintiff points to several decisions in which the courts ultimately determined that an arbitration proceeding was not an adequate substitute for a trial in federal court. *McDonald v. City of West Branch*, 466 U.S. 284, 291 (1984); *Kulavic v. Chicago & Illinois Midland Ry. Co*, 1 F.3d 507, 517 (7th Cir. 1993). *McDonald* and *Kulavic* do not establish that collateral estoppel never arises from arbitration awards; instead, the courts observed that "[b]ecause federal courts are not required by statute to give *res judicata* or collateral estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned." *McDonald*, 466 U.S. at 288. The *McDonald* and *Kulavic* courts were unwilling to conclude that an unreviewed arbitration decision could bar court action to enforce a plaintiff's "congressionally created and judicially enforceable statutory rights" that arbitration may not provide. *Kulavic*, 1 F.3d at 515.

In *McDonald*, the plaintiff's cause of action arose from a § 1983 action in which he alleged that his discharge was the direct result of an exercise of his First Amendment freedoms. *McDonald*, 466 U.S. at 286. The Supreme Court refused to conclude that this claim was barred by collateral estoppel arising from an arbitration proceeding because Congress intended statutory and constitutional rights to be "judicially enforceable" pursuant to § 1983. *Id.* at 289. Significantly, the retaliatory motivation that forms the basis for the claim under § 1983 would not have been an issue in the arbitration award. *Id.* at 291. *Cf. Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006) (vacating the district court's ruling that the plaintiff's § 1983 retaliation claim was collaterally estopped by the prison disciplinary board's findings against him).

The plaintiff in *Kulavic* sought recovery through the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, for injuries he suffered on the job in an altercation with his boss.

12

*Kulavic*, 1 F.3d at 509.  Kulavic was fired when he failed to return to work due to ongoing physical problems relating to those injuries.  *Id.*  His termination was upheld on appeal by an arbitration board, and he did not contest the arbitration board's findings that he was not wrongfully terminated.  *Id.* at 512.  Because he sought recovery of lost wages and benefits related to his personal injuries rather than his termination, the Seventh Circuit refused to find his lost pay claim precluded by the arbitration award.  *Id.* at 519-20.  The court emphasized the importance of protecting the plaintiff's statutory rights as devised by Congress under FELA.  *Id.* at 517.  Plaintiff here has not suggested that her malicious prosecution claim arises under federal law.[6]  Nor does the Illinois public policy interest militate in her favor, as Illinois state courts have held that public policy favors the *exposure* of crime, not suits for malicious prosecution that can deter good-faith pursuance of crime.  *Joiner*, 82 Ill.2d at 44, 411 N.E.2d at 231.

Even if this court concludes that the RLA arbitration constitutes "prior litigation," Plaintiff urges that no collateral estoppel arises here because she herself was not sufficiently involved in the conduct of the prior litigation.  She cites the Seventh Circuit's decision in *Kunzelman v. Thompson*, 799 F.2d 1172 (7th Cir. 1986).  Plaintiff in *Kunzelman* was a successful jail-house lawyer who had been unsuccessfully prosecuted for practicing law without a license.  *Id.* at 1174.  After the criminal charges were dismissed, Kunzelman sued the sheriff, the chief deputy sheriff, and the county for violating his constitutional right to assist other inmates, arguing that the dismissal of the criminal charges raised a collateral estoppel bar in his favor in his § 1983 action.  *Id.* at 1175.  The Seventh Circuit rejected the argument.  The court concluded that the sheriff was not in privity with the state's attorney who initiated the criminal complaint, and that his failure to actively discourage the filing of the complaint was not a sufficient basis for a finding that he was personally involved in it.  *Id.*

---

[6] To the extent that any federal interest is at stake here, Defendant contends that it is Congress' interest in the finality of RLA arbitration awards, 45 U.S.C. § 153(m), an interest that supports the application of collateral estoppel in the case at bar.  (Def. Reply Memo, at 8.)

Plaintiff here contends that she also was not sufficiently involved in the arbitration proceeding to justify a determination that she is barred by the adverse ruling there. She notes her inability to summon witnesses on her behalf in the arbitration. (Pl. Memo at 15.) Ms. King was a named party in the prior arbitration, however, and *Kunzelman* does not establish that an inability to compel the appearance of witnesses always precludes application of the collateral estoppel defense. Notably, Plaintiff did not request any witnesses to give testimony on her behalf at either hearing, (Def. Response to Pl. 56.1 Stmt. ¶ 17), and has not now suggested what testimony these witnesses would have offered, had they been called; she thus offers nothing that suggests her inability to call a witness prejudiced her. Nor has she suggested that the union's interests in that proceeding were not aligned with hers. This court concludes that Ms. King was indeed a party, or sufficiently in privy with a party, to her prior arbitration to satisfy this element of the collateral estoppel doctrine.

**Final Judgment on the Merits**

Defendant argues that the SBA arbitration awards are final judgments on the merits that are entitled to collateral estoppel effect. (Def. Memo, at 7.) Defendant cites numerous cases in which findings by arbitrators were given issue-preclusive effect to stop employees from bringing further legal action after their initial arbitration defeat. *Id*. These cases include *Taylor*, wherein the Illinois Appellate Court relied upon arbitrators' findings of "clear and convincing evidence" that the plaintiffs were guilty of their accused crime to collaterally estop the plaintiffs' malicious prosecution claim. *Taylor,* 275 Ill. App. 3d at 662, 656 N.E.2d at 140. *See also BEM v. Anthropologie,* 2000 WL 1849574, at *11-12 (citing *Taylor* and dismissing a fraud claim on collateral estoppel grounds because a prior arbitration award had determined that the certificate in question was not fraudulent).

Moreover, Defendant notes that both the RLA's statutory language and prior decisions of the Supreme Court support the use of the SBA's award in a collateral estoppel claim. (Def. Memo,

14

at 8.) The RLA charges the SBA with final authority to determine labor disputes by issuing findings that "shall be final and binding upon both parties to the dispute . . . ." 45 U.S.C. § 153(m). The Supreme Court has also found that awards by arbitration boards under the RLA are not subject to re-litigation in the courts. *Union Pacific R.R. Co. v. Price*, 360 U.S. 601, 617 (1959). To allow re-litigation would contravene the intent of Congress in enacting the RLA by rendering final SBA decisions into mere "advisory opinions." *Id.* Defendant argues that Plaintiff is attempting to collaterally attack the SBA award with her malicious prosecution claim by "repackaging" the issues that were decided against her in the previous arbitration. (Def. Memo, at 9.)

Plaintiff insists that she is neither attempting to re-litigate her dismissal nor to assert any kind of wrongful discharge claim. (Pl. Memo, at 15.) Rather, her malicious prosecution action arises from the allegedly false criminal charges that BNSF initiated against her and has "nothing to do with her discharge." *Id.* Plaintiff's argument appears to beg the question of whether an *element* of her malicious prosecution claim has already been settled by the SBA arbitration, thereby collaterally estopping her present case. Notably, Plaintiff does not offer any arguments suggesting that Defendant's motivations behind its pursuit of criminal charges against her were based upon any actionable violation of her rights (such as race or protected speech). The court is satisfied that the RLA awards here are sufficiently "final."

**Full and Fair Opportunity**

Even where the three collateral estoppel requirements are met, courts decline to give collateral estoppel effect to a prior proceeding where the party against whom the claim is leveled lacked a "full and fair opportunity to contest the issue." *Taylor*, 275 Ill. App. 3d at 660, 656 N.E.2d at 139. Defendant argues that Plaintiff was indeed granted this full and fair opportunity in the prior arbitration. (Def. Memo, at 10-11.) Under Illinois law,

> The "full and fair opportunity" requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. Further, "actually litigated" does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it. Collateral estoppel generally will

15

> apply as long as the party had a procedural, substantive, and evidentiary opportunity to be heard on the issue.

*Taylor*, 275 Ill. App. 3d at 663, 656 N.E.2d at 141 (citations omitted). Defendant maintains that Plaintiff was afforded a "procedural, substantive, and evidentiary opportunity" to present her case, as evidenced by her ability to cross-examine each railroad witness, present her own testimony, and submit written arguments and exhibits on her behalf. (Def. Memo, at 11 (citing Def. 56.1 Stmt. ¶¶ 11, 15, 21).) Defendant also notes that the procedural objections that Plaintiff raised—the three-day delay in conducting the hearing and BNSF's failure to produce certain customer witnesses—were addressed by the SBA and ultimately ruled to be immaterial. (Def. Memo, at 11-12 (citing Def. 56.1 Stmt. ¶¶ 24, 26).) The plaintiffs in *Taylor* similarly argued that they were dissatisfied with their union counsel and his failure to provide "exonerating witnesses" on their behalf. *Taylor*, 275 Ill. App. 3d at 664, 656 N.E.2d at 141. The *Taylor* court overruled this objection, noting that the plaintiffs had had the opportunity to present evidence at the arbitration hearings and had failed, in part, to do so. *Id.* at 664, 656 N.E.2d at 142. As in *Taylor*, though Ms. King and her union representative lacked the authority to compel the presence of witnesses at either of her hearings, she did have the opportunity to testify for herself and, notably, did not request that any other witnesses be present. (Def. Response to Pl. 56.1 Stmt. ¶ 17.)

In any event, as Defendant observes, Plaintiff's inability to compel witnesses on her own behalf is arguably immaterial here; the issue is whether Defendant acted with malice and lacked probable cause in initiating the theft prosecution against Plaintiff. (Def. Memo, at 13.) The fact that certain witnesses were absent from the hearings would not affect the SBA's conclusion that Defendant did not act capriciously in firing Plaintiff because Defendant genuinely believed Plaintiff stole the tickets. *Id.* The testimony of the BNSF investigator who interviewed the customer witnesses and established the link between the recovered tickets and Ms. King is sufficient to show Defendant's good-faith belief in Plaintiff's wrongdoing at the time it initiated the prosecution against her. *Id.*

Plaintiff does argue that *Kulavic* recognizes the failings in the fact-finding process conducted in arbitration proceedings as opposed to those conducted in a court of law. (Pl. Memo, at 10.) The *Kulavic* court quotes Justice Powell in *Alexander*: "The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Kulavic*, 1 F.3d at 515 (quoting *Alexander v. Gardner-Denver*, 415 U.S. 36, 57-58 (1974)). In this case, Plaintiff argues again, her procedural and evidentiary rights were similarly violated: she had no right to engage in discovery or to compel witnesses, and the company officer who presided over the hearing was the same person who ultimately chose to fire her. (Pl. Memo, at 10-11.) And as in *Kulavic*, where the arbitration board was limited to reviewing a record created by the employer in an employer-controlled investigative hearing, *Kulavic*, 1 F.3d at 517, the SBA here acted as a reviewing court solely of the railroad-controlled hearing record. (Pl. Memo, at 11.)

As stated previously, though, the rights at issue in *Kulavic* were federally created rights of action for the plaintiff to seek tort relief, a decidedly different matter than the termination case decided by the arbitration board. Thus, the *Kulavic* court had a basis for concern that the procedural safeguards of the prior arbitration did not adequately protect the plaintiff's rights. Here, in contrast, Plaintiff's cause of action requires her to make a showing specifically contrary to the findings of the arbitrator—*i.e.*, that there was no probable cause to find her guilty. The "full and fair opportunity" requirement is a relatively low threshold to meet, and given that Plaintiff had both notice of her hearings and opportunity to testify for herself at each, this requirement is satisfied.

## CONCLUSION

Plaintiff was a named party in the arbitration proceedings, and although she may not have enjoyed every procedural safeguard in those proceedings that would have been granted to her in federal courts, the court concludes she did have a full and fair opportunity to contest the basis for

her termination. To establish her claim of malicious prosecution in this case, Plaintiff would need to prove that Defendant lacked probable cause in pursuing its criminal charges against Plaintiff, and that in doing so, acted maliciously. The SBA's determination that Defendant had sufficiently convincing evidence to establish that Plaintiff had, indeed, stolen the tickets, precludes a determination in her favor on the issue of probable cause.

Significantly, although Plaintiff has devoted substantial attention to the more difficult legal issue of whether collateral estoppel is available here, she has said very little about the much simpler factual question: whether BNSF had probable cause to believe she was involved in the theft of passenger tickets. She does not even now suggest that there is evidence beyond the dismissal of the criminal charges on timeliness grounds that would indicate her innocence of the alleged wrongdoing. Nor has she identified any circumstances that Special Agent Lange ignored or overlooked. She has presented no basis for a conclusion that he, or any of the BNSF decisionmakers, acted maliciously or even carelessly in connection with her discharge.

Defendant's motion for summary judgment (9) is granted.

ENTER:

Dated: August 8, 2006

_____
REBECCA R. PALLMEYER
United States District Judge